**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Matthew L. Fornshell** | ) | **CASE NO. 1:06-cv-1505** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **FirstMerit Corp.,** | ) | |
| | ) | **Memorandum Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiff's Motion to Remand (Doc. 4). Plaintiff Matthew Fornshell is acting as receiver for Joanne and Alan Schneider and a number of the Schneiders' companies. This action relates to Defendant FirstMerit Corporation allegedly aiding the Schneiders in running a prolific "Ponzi Scheme." For the following reasons, Plaintiff's Motion is GRANTED.

**BACKGROUND**

Plaintiff alleges the following in his Complaint. Plaintiff is the receiver for the Schneiders and various companies they owned or controlled. The Schneiders were involved in a Ponzi Scheme whereby they sold promissory notes to investors and made payments on the notes

1

with the proceeds from the sale of new notes.  The Schneiders eventually raised at least $60 million in this manner.  The promissory notes were not registered and the Ohio Division of Securities eventually initiated proceedings and obtained an injunction to prohibit any further sale of promissory notes.  This resulted in the collapse of the Ponzi Scheme—without new investors the existing investors lost millions of dollars.

Defendant FirstMerit has its headquarters in Akron, Ohio.  The Schneiders had a long-standing relationship with FirstMerit due to certain real estate purchases, and relevant to this action had a "mortgage escrow" account with FirstMerit.  Plaintiff alleges that FirstMerit's handling of the mortgage escrow account played an indispensable role in the Schneiders' Ponzi Scheme.  A mortgage escrow account is used by a real estate developer to pay mortgage obligations, and according to Plaintiff has certain distinct characteristics.  Among other things, payments from a mortgage escrow account do not fluctuate significantly and are made to banks and others who finance real estate transactions.  Deposits to a mortgage escrow account typically consist of uniform rental payments, one-time payments from property sales and funds from other accounts.  However, in this case payments from the Schneiders' account were made to individuals and in wildly varying amounts.  Nearly all of the deposits were one-time deposits in relatively small, rounded amounts.

Plaintiff alleges that FirstMerit either knew or should have known from the nature of the transactions that the Schneiders were misusing the mortgage escrow account to launder money.  Another bank where the Schneiders later set up a similar account shut down the account and alerted law enforcement based on similar activities.  First Merit, on the other hand, never took any such action and never sent the Department of the Treasury a Suspicious Activity Report

("SAR") as required by law.

Plaintiff brought five Counts in a Complaint filed in the Cuyahoga County Court of Common Pleas. Count One is for Rescission under Ohio Rev. Code § 1707.43 based on the sale of unregistered promissory notes. Plaintiff claims that FirstMerit bears liability for rescission to those who purchased unregistered promissory notes from the Schneiders because it participated in and aided the Schneiders by permitting them to use the mortgage escrow account as an essential instrument in conducting the Ponzi Scheme. Count Two is for Rescission under Ohio Rev. Code § 1707.43 based on fraud. FirstMerit bears liability under the statute as a result of its participation in the Schneiders' fraudulent sales. Count Three is under the Ohio Corrupt Activities Act and alleges that FirstMerit directly or indirectly participated in the affairs of the Schneiders' enterprise by "knowingly or recklessly facilitating the transactions, in connection with which the 'pattern of corrupt activity' took place." Count Four is for Aiding and Abetting Fraud. FirstMerit "knowingly or recklessly aided and abetted [the Schneiders'] unlawful conduct by permitting [them] to launder money through their 'mortgage escrow' account, providing the crucial instrument through which money flowed from new investors to existing ones." Finally, Count Five incorporates the above allegations and charges FirstMerit with conspiring with the Schneiders in committing the fraud perpetrated on purchasers of the promissory notes.

FirstMerit responded by removing the action to this Court. FirstMerit claims that Plaintiff's claims are completely pre-empted, and thus subject to this Court's federal question jurisdiction, under sections of the National Bank Act and regulations promulgated by the Office of the Comptroller of Currency. Plaintiff disputes that its claims are completely pre-empted and

asks the Court to remand the case to the Cuyahoga County Court of Common Pleas.

**DISCUSSION**

Plaintiffs filed this action in the Cuyahoga County Court of Common Pleas. Defendant removed the action to this Court pursuant to 28 U.S.C. § 1441(a), on the grounds that this is a "civil action brought in State court of which the district courts of the United States have original jurisdiction . . . ." If the Court's jurisdiction is founded on a claim or right arising under the Constitution, treaties or laws of the United States, the action is removable without regard to the citizenship or residence of the parties. 28 U.S.C. § 1441(b). The party seeking removal bears the burden of demonstrating that the Court has jurisdiction. *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 549 (6th Cir. 2006).

Whether an action arises under federal law is determined by reference to the Plaintiff's well-pleaded complaint. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). The existence of a federal defense, including the defense of pre-emption by federal law, will not bring a plaintiff's state-law claim within the Court's federal question jurisdiction. *Id*. This is so even if the defense is anticipated by the well-pleaded complaint and the parties agree that the federal defense is the only matter truly at issue. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987). The Supreme Court has nonetheless recognized two exceptions to this general rule. First, Congress may expressly provide that a state claim may be removed to federal court. *Beneficial*, 539 U.S. at 8. Second, a federal statute may wholly displace the state-law cause of action through complete pre-emption. *Id.*

Complete pre-emption must be distinguished from ordinary pre-emption. *Roddy v. Grand Trunk W. RR Inc.*, 395 F.3d 318, 323 (6th Cir. 2005). Ordinary pre-emption is a defense

that state courts are presumptively competent to decide. *Wright v. General Motors Corp.*, 262 F.3d 610, 615 (6th Cir. 2001); *see also Beneficial*, 539 U.S. at 13 (Scalia, J., dissenting) ("To be sure, pre-emption requires a state court to *dismiss* a particular claim that is filed under state law, but it does not, as a general matter, provide grounds for *removal.*"). "[T]he complete preemption doctrine is not simply one of preemption of the law, it is a sort of 'super preemption' which preempts not only state law, but also creates federal removal jurisdiction – to use the jargon of the day, it is 'preemption on steroids.'" *Palkow v. CSX Trans., Inc.*, 431 F.3d 543, 553 (6th Cir. 2005). Complete pre-emption requires a demonstration of Congressional intent not only to pre-empt state law but also to remove the subject matter from the state courts entirely. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66-67 (1987); *Musson Theatrical, Inc. v. Modernage Photo Serv., Inc.*, 89 F.3d 1244, 1253 (6th Cir. 1996).

"In the absence of explicit direction from Congress, the Supreme Court has stated that it would be reluctant to find the extraordinary preemptive power that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Roddy*, 395 F.3d at 323. Absent such explicit direction, Congress's intent to completely pre-empt state law "is expressed through the creation of a parallel federal cause of action that would 'convert' a state cause of action into the federal action for purposes of the well-pleaded complaint rule." *Id.* (quoting *Strong v. Teletronics Pacing Sys., Inc.*, 78 F.3d 256, 260 (6th Cir. 1996)); *see also Beneficial*, 539 U.S. at 8 (explaining that complete preemption only exists where "the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action").

FirstMerit here relies on 12 U.S.C. § 24 (Seventh) and 12 U.S.C. § 484(a) to completely

pre-empt plaintiff's state law claims.  FirstMerit points to language from Section 24 (Seventh) authorizing national banks:

> To exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; ***by receiving deposits***; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this title.

12 U.S.C. § 24 (Seventh) (emphasis added).  FirstMerit also directs the Court to this language from 12 U.S.C. § 484(a):

> No national bank shall be subject to any visitorial powers except as authorized by Federal law, vested in the courts of justice or such as shall be, or have been exercised or directed by Congress or by either House thereof or by any committee of Congress or of either House duly authorized.

12 U.S.C. § 484(a).

Both of these statutory provisions are from the National Bank Act.  As FirstMerit notes, the Supreme Court recently held that portions of the National Bank Act completely pre-empt state law in *Beneficial Nat'l Bank v. Anderson.*  539 U.S. at 11.  The *Beneficial* plaintiffs brought a complaint in Alabama state court against a national bank for "usury violations" for charging "excessive interest in violation of the common law usury doctrine . . . and Alabama Code § 8-8-1, *et seq.*"  *Id*. at 9.  The case was removed on the basis that the usury cause of action was completely pre-empted by Sections 85 and 86 of the National Bank Act.  *Id*. at 4-5.  The Supreme Court addressed these provisions as follows:

> Sections 85 and 86 serve distinct purposes. The former sets forth the substantive limits on the rates of interest that national banks may charge. The latter sets forth the elements of a usury claim against a national bank, provides for a 2-year statute of limitations for such a claim, and prescribes the remedies available to borrowers who are charged higher rates and the procedures governing such a claim. If, as

6

> petitioners asserted in their notice of removal, the interest that the bank charged to respondents did not violate § 85 limits, the statute unquestionably pre-empts any common-law or Alabama statutory rule that would treat those rates as usurious. The section would therefore provide the petitioners with a complete federal defense.

*Id.* at 9.

However, the federal defense was not enough to justify removal. "Only if Congress intended § 86 *to provide the exclusive cause of action* for usury claims against national banks would the statute be comparable to the provisions" the Court had previously relied upon to find complete pre-emption. *Id.* (emphasis added). The Supreme Court concluded as follows: "Because §§ 85 and 86 provide the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim of usury against a national bank." *Id.* at 10.

Plaintiff argues that *Beneficial* does not apply here, since Section 24 (Seventh) and Section 484(a) do not create any remedy, let alone an exclusive cause of action that displaces one of Plaintiff's state-law claims. The Court agrees. The *Beneficial* Court only found complete pre-emption because Sections 85 and 86 of the National Bank Act created a usury cause of action identical to a state-law usury claim. 539 U.S. at 9. Section 24 (Seventh), on the other hand, is simply a broad enabling provision that creates no remedy. *See, e.g., Hancock v. Bank of Am.*, 272 F. Supp. 2d 608, 612 (W.D. Ky. 2003). Under Section 484(a) visitorial powers are merely limited by reference to other Federal law. 12 U.S.C. § 484(a).

Complete pre-emption in the absence of an express statement from Congress requires an exclusive federal cause of action.[1]  *Beneficial*, 539 U.S. at 9-10; *Roddy*, 395 F.3d at 323; *Strong*,

---

[1] FirstMerit contends that this "would make no sense, in that it would preclude Congress from providing for complete preemption by affirmatively permitting conduct." To the contrary, it would

7

78 F.3d at 260. Accordingly, other courts have similarly rejected attempts to expand *Beneficial* to Sections 24 (Seventh) and 484(a). *See, e.g., Hancock*, 272 F. Supp. 2d at 612 (rejecting a claim that Section 24 completely pre-empts state law); *Jacobs v. ABN-Amro Bank N.V.*, 03-cv-4125, 2004 U.S. Dist. LEXIS 6888, *13-16 (E.D.N.Y. April 21, 2004) (rejecting a claim that either Section 24 or the OCC's "exclusive authority to 'visit' national banks" completely pre-empts state law).

FirstMerit next points to regulations promulgated by the Office of the Comptroller of the Currency ("OCC") as providing the necessary intent to completely pre-empt Plaintiff's state claims. However, complete pre-emption may only come from Congress. "[A]lthough an agency has the ability to promulgate regulations with the force of federal law and therefore has the ability to preempt state causes of action through ordinary preemption, it does not have the ability to create a right of action where Congress has not intended to do so." *Roddy*, 395 F.3d at 326 (citing *AmSouth v. Dale*, 386 F.3d 763, 776-77 (6th Cir. 2004)). "While the agency can create federal law, it cannot expand federal jurisdiction."[2] *AmSouth*, 386 F.3d at 777.

Plaintiff also seeks his costs and attorneys' fees incurred in bringing his motion. The Court may award costs and fees pursuant to 28 U.S.C. § 1447, which states that "[a]n order

---

make no sense to automatically equate Congress "affirmatively permitting conduct"—i.e., pre-empting contrary state laws—with complete pre-emption. If Congress wishes to pre-empt state law *and* remove the subject matter from the state courts, it may simply do so.

[2] FirstMerit responds that these cases did not involve regulations promulgated under statutes that completely pre-empt state law. Of course, if the statute completely pre-empts state law, there is no need to look to regulations.

remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  The Court generally has discretion in deciding whether to award costs and fees.  *Bartholomew v. Town of Collierville*, 409 F.3d 684, 686 (6th Cir. 2005); *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240 (6th Cir. 1993).  Fees must be awarded if the removing party's argument was "devoid of even fair support."  *Bartholomew*, 985 F.2d at 688.  The Court concludes that costs and fees are not appropriate in this case.  *Beneficial* is a recent case in the evolving and sometimes difficult area of complete pre-emption.  Although the Court ultimately disagrees that *Beneficial* extends to this action, FirstMerit's contention certainly was not devoid of even fair support.

### **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Remand is granted.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated:  12/7/06